We proceed to the next case, Mandeleer v. Industrial Commission, 4110724. Counsel, please. Thank you, Your Honor. May it please the Court, Counsel. My name is Tom Licton. I represent Petitioner Mandeleer. I'm asking the Court to reverse the Commission and the arbitrator's findings that there was no causal connection between the Petitioner's work injury of August 30, 2004, when she slipped and fell on a wet floor in the mistaken shape of Quincy, Illinois, while carrying some ketchup bottles and cut her second, third, and fourth fingers on her left hand, and her subsequent condition of ill-being, which was panic disorder with agoraphobia and chronic major depressive disorder. I believe that there's a very sound basis for asking you to do that, and that is that the only credible, and I believe also admissible, medical opinion in this case supports strongly that there is a causal connection. Who was that? Excuse me? Who was that? Dr. Frank Froman. What did the arbitrator think about Dr. Froman? The arbitrator found that Dr. Froman's opinion was not very credible. Is that important? Excuse me? Is that important? medical opinion, the arbitrator and the Commission may not arbitrarily reject that opinion, the opinion of a witness or of a medical witness, without giving specific and legitimate reasons. That's the Sorensen case. And as I laid out in my brief, the five reasons that the arbitrator articulated in his decision for finding that Dr. Froman's opinion was not credible are not legitimate. They are specific, but they're not legitimate at all. And as I said in my brief, the first reason was that the arbitrator gave for not finding Dr. Froman to be credible was that the arbitrator said that Dr. Froman was led to believe that there were no pre-accident panic attacks. Well, there were no pre-accident panic attacks. That's very clear from the record. You're saying the claimant's testimony and medical records do not indicate that she began experiencing panic attacks sometime between May and August 2005, nearly a year after the work accident? You're saying there was no panic attacks. There was some evidence of treatment, however, for depression and other things prior to the accident, correct? Absolutely correct. The petitioner had been treated for depression beginning probably in junior high. She had a very clear history, and it's in the records, of treatment for depression. And in 2003, she was referred to Transitions of Western Illinois, and she was treated there for depression, and also she was complaining of some anxiety. But there was no evidence whatsoever that she had ever had anything, even approaching a panic attack, prior to her work injury of August 30, 2004. In fact, in the record, if you look at the October 28, 2003 record from the Transitions of Western Illinois, the intake worker, they have sort of a form that they fill out, and they put X's in boxes for what the complaints are and what they're not. And there was an X next to social anxiety, there was an X next to generalized anxiety or something like that, but nothing by panic attacks or anything like that. How do you respond to this? I think reading the commission's decision fairly, one of the things that we're concerned about is there's an accident. There's no panic attacks for quite a bit of time after the accident. There's this gap that's troubling to the commission, and then the commission cites two other specific factors in the claimant's life that coincide with panic attacks, correct? There's some pre-existing psychological issues, then you have the accident, you have a long delay, and there's some other stressors in the claimant's life. That's correct? Yes. So where did the commission go wrong in assessing evidence? Well, the commission went wrong because the two other stressors, which I think ones you're referring to, are the birth of a child in May 2005 and also the breakup of the boyfriend around that same time. There's no evidence that either of those events were responsible for causing any problem, but even if they were, let's say hypothetically, responsible for increasing the petitioner's mental illness, if you will, we know that the San Francisco case says that the work injury need only be one factor in producing a condition of ill-being. It need not be the only factor, it need not be the principal factor. But as I pointed out in my brief, the arbitrator, where the arbitrator and the commission went wrong, in one respect was the arbitrator claims that the record says that the petitioner had a history of panic attacks in relation to the birth of her daughter in May 2005. The words in relation to, those are not in the record. Those are not in the medical record. The arbitrator said they were there, but they're not. So? You're talking about temporal relation at that same time? Well, yeah, I don't know whether he meant temporal or positive, but he put those words in, and those words are not in the record. And that is not something, that's something that the arbitrator and commission enunciated as being one of the reasons, but it's not in the record. Now, my impression was that the arbitrator felt that there were some questions that could have been asked, or should have been asked maybe, of Dr. Frohman on cross-examination that weren't asked, because the arbitrator says, well, Dr. Frohman provided no reasonable explanation for the delay in onset of the panic attacks with agoraphobia. Well, I think he did provide a very reasonable explanation. He explained it quite clearly. Initially, when the petitioner was first injured and when she was first taken to the Quincy Medical Group immediate care center, she had symptoms of vasovagal symptoms. So, as Dr. Frohman pointed out, that is an indication of the beginning of this mental process, which as he described was an undoing, like the ripping of a, or taking of a thread from a sweater, that eventually, after about a year, resulted in her starting to have these severe panic attacks, where she couldn't get her breath, she had tingling in her hands, she felt she was going to pass out. Repeatedly going to the emergency room at Blessing Hospital, going to Quincy Medical Group, and then going back to transitions for additional treatment. Agoraphobia, is that the extreme condition where somebody eventually doesn't want to leave their house? Is that the kind of thing we're talking about? That's correct. That's what it is. And she described that as part of her problem. And it also, I think, has to do, as I understand it from what Dr. Frohman testified, difficulty being around people, or being around a lot of people. So that, there is no, I don't think that there's any dispute that she does have that condition, panic attacks with agoraphobia, and that this also, in turn, aggravated her depression. You couldn't even convince the commissioners, Frattiani and Gore? I wasn't able to convince any of the three commissioners, and I was not able to convince the arbitrator. However, I believe that the reasons stated are not legitimate reasons. And for that reason, I believe that this court should reverse, because, well, first of all, the respondent's medical expert, Dr. Wayne Stillings, I don't think his evidence should have even been admitted because of his failure to comply with Section 12. Judge Ortval in Adams County Circuit Court said he thought that was harmless error. I don't think it was harmless error, because I think the arbitrator got confused and thought, because Dr. Stillings had mentioned that there were existing panic attacks, whereas there weren't. But in any event, Dr. Stillings' testimony was found to be totally lacking in credibility, and I think that's certainly, I agree with that 100%. So you're left with only Dr. Froman's opinion as to the causal connection issue. And as I have been pointing out, the five reasons that the arbitrator was able to articulate, none of them are legitimate reasons. None of them are correct reasons. So arbitrator Chauvin's decision, you know, he's complaining that Dr. Froman did not explain away the petitioner's complaints of being anxious and stressed in 2003. He didn't need to explain that away. Pardon me? He didn't need to explain that away. Well, on a date, the arbitrator thought it was important. Well, because the petitioner did not, I mean, there was no dispute that she was anxious and stressed and had some depression before that, but she never had any panic attacks. And there was no dispute that this, according to Dr. Froman, that this accident was the causative factor that caused her to go on and start suffering from the panic attacks and agoraphobia. And if the question should have been explained away, it's not the petitioner's responsibility to bring that up on cross-examination. That's the respondent's responsibility. So I would respectfully request that the case, as I said, be reversed and the petitioner be found permanently and totally disabled as of November 16, 2005. And I would also point out that Dr. Froman testified that he thought if the petitioner did get proper medical care, she probably could recover from her condition. Thank you. Counsel, please. Good morning, members of the Court. Richard Zenz on behalf of the State of Cheyenne. May it please the Court, Mr. Lipton. I think it's important to note a few things, first of all. The petitioner suffered, and it's undisputed, lacerations to the tips of three fingers. There was no tendon, nerve, or bone damage. She was found to be an MMI with no complaints of any sort within four months afterwards. And I don't think there's any need to belabor the problems she had before the accident, but they were there. What we're dealing with here is a manifest weight question, particularly with regard to the credibility of the witnesses, particularly the medical witnesses who were involved. One of the things that I find disturbing is that Dr. Froman talked about this cascade of events. And Justice Stewart, you brought up a question about temporal relationships here. I think that's significant because if, in fact, this cascade of events was as significant as Dr. Froman thought, then he doesn't assign any particular significance to either the breakup with the father of her children or the difficult pregnancy and near death of a child in birth. I think that's very significant. I mean, why is the finger issue not mentioned but the others are? It's silent on the finger issues, the injury from work. It's just very significant. And that relates to the doctor's credibility, and that's what the commission passed on. This court has often talked about the standard. We've all heard it before. We've all been on both sides of it before. But the commission did what it was supposed to do. It analyzed the medical. It analyzed the situation. And it made its decision based upon disputed facts. I also disagree with Mr. Lipton's assessment that proving this with relation to the doctor's failure to explain a way to the petitioner's worries and anxieties, that's part of the petitioner's burden of proof. The petitioner has the burden to prove each and every element by a preponderance of credible evidence. It's not the respondent's problem to cross-examine the doctor and quite possibly prove it for the petitioner. I don't think if I had taken that deposition I would have asked the doctor to explain. I think it's the one question too many that all of us talked about in law school. Getting to the issue of the admission of the deposition, Mr. Lipton objected to it on the grounds that it was a violation of Section 12. Section 12, as this court has ruled on before, particularly in the Mulligan case, requires that the doctor's report be disclosed 48 hours prior to the hearing. And in the City of Chicago case found that the hearing was the arbitration of the case. You're not going to argue that if the deposition is taken before the hearing you don't have to disclose the report before the deposition, are you? I'm sorry? You're not arguing that if the deposition is taken before the hearing you don't have to give them the report before the deposition? No, I'm not making that argument. Okay. This really comes in, there's been a lot of talk among defense practitioners lately about a situation in which we have surveillance of a claimant and we send the surveillance to an IME doctor, our hired gun, to review and give his opinion. That's an argument, go ahead. I'm sorry. I'm on the other side of that this time. But all kidding aside, if I send surveillance to an IME doctor to review and he bases his opinion on it, I think I have an obligation to disclose that. And I think that relates to part of what you were asking, Justice Stewart. I think the petitioner has the right to cross-examine the doctor on that issue because his opinion is based on it. Similarly, in this case, Mr. Lipton objected to the whole procedure but the deposition was bifurcated because Dr. Stillings refused, I think improperly so, to turn over the results of testing that he did and that was part of his opinion. That was wrong. I'm not making any arguments about whether that deposition should have been given any credibility. I can't really argue with that issue. But the arbitrator specifically stated, I give him no credibility. I'm not going to take into account what he said in that opinion. He doesn't discuss any of that. So you're saying there's no prejudice. The commission rejects Froman, they reject Stillings. So if arguably there was any error, since they didn't realign it, you're saying what's the harm? I'm saying it's not fair. How is this reversible because they didn't believe him to begin with? Exactly. I think on all accounts here, the issue about the admission to the deposition is moot. Furthermore, the manifest weight was something that the commission was required to determine. I would ask that the commission's decision be affirmed in all respects. Thank you. Thank you. With regard to the fact that there is no mention in the psychiatric or the transitions records of the work accident where the fingers were lacerated, I don't think that's of any significance. And there's no claim by even Dr. Stillings that that would be of any significance. Certainly a person who develops a mental condition is not going to necessarily connect in his or her own mind up something that they may not understand could be a cause of what they're dealing with, especially somebody with very limited education and experience as Ms. Lear in this case. Also, as far as this harmless error issue, I don't know if it's harmless error or not, because as I said before, one of the reasons that the arbitrator gave for finding that Dr. Froman did not have much credibility was that he said that Dr. Froman was led to believe that there were no pre-accident panic attacks. And there were no pre-accident panic attacks, but Dr. Stillings claimed that there were. And I think it was pretty clear when I cross-examined him that he was incorrect about that, but that was his claim in his report and in his direct testimony. And the commission rejected his testimony. They didn't credit Stillings, did they? That's correct. That's what the arbitrator said. But then why, if he didn't credit anything that Stillings said, why did he put as one of his five reasons for rejecting or for not giving Dr. Froman very much credibility his statement that Dr. Froman was led to believe that there were no pre-accident panic attacks? So I think the arbitrator on that part of it either got confused or believed that there were pre-accident panic attacks when there weren't. And as I did point out in my brief, the other four reasons I don't think were legitimate either. He said it's important to note that the petitioner worked at the Village Inn from July to November of 2005. Why is that important to note? She couldn't handle that job because of her panic attacks and agoraphobia. Thank you. The court will take the matter under advisory for disposition. The court will stand on recess, subject to call.